G. BRIDGEFORD & CO. *v.* J. MORGAN HALL et al.

Corporations must not only be authorized by the Legislature, but a name must be given to them; and it is in that name they must sue or be sued, and do all their legal acts, although a slight alteration in this name be not important.

It is not necessary to record the charter of a corporation in the office of the Secretary of State.

The Act of March 14th, 1855, organizing corporations, does not come in conflict with the Article 115 of the Constitution of 1852, and is, therefore, constitutional.   That law embraces but one object.

The right to construct and to own boats necessarily includes the right to employ or navigate them.

APPEAL from the Third District Court of New Orleans, *Fellowes,* J. *P. H. Morgan* and *L. Madison Day,* for defendants.

*Eggleston & Hart, for plaintiffs and appellants.*—This question is settled

by positive law. Acts 1855, p. 183, § 3. This section requires that the charter of incorporation shall contain, first, the name and title of the corporation. And the second section of the same Act declares: That said corporations (those which the first section authorizes to be created) shall have power and authority, first, to have and enjoy succession by their corporate name, etc.; second, to contract, sue, and be sued, in their corporate name; third, to make and use a corporate seal; fourth, to hold and convey, etc., under their corporate name, etc., etc.

Is, then, the New Orleans and Bayou Sara Mail Company exempted from responsibility, or any of its members, as commercial partners, to third persons dealing with it, or them, by the production of a charter of incorporation, creating a company, of the cognomen of the New Orleans and Bayou Sara Company? Again: another reason in support of the proposition, we assert, may be derived from the text of the third section of the law already quoted, p. 183. It declares that every charter shall contain a description of the purposes for which it was established. Should not the name of the corporation indicate the objects and purposes of the corporation? Ought there not to be some similarity between the name and the objects of the charter, to denote and apprise the public of them? If such was not the design of the law, why does the fourth section of this Act require the registration and publication of the charter?

To baptize an ideal being, by the name of a Mail Company conveys the meaning to a community, that the transportation of the mail was at least one of the objects of the company; but the name Bayou Sara Company announces no such object or purpose. A mail company, employed by the Government to carry the public mail, could command greater confidence than an ordinary commercial company, without such an employment; hence the necessity of having a fixed title. It must be sued, and contract, says the statute, by the name it takes in its charter. Section 3, C. C. 437.

The reception of the charter in evidence will not aid the defendants. The allegata and probata do not correspond. The plea is that the New Orleans and Bayou Sara Mail Company, is a corporation duly chartered under the laws of the State ; the proof made is that the New Orleans and Bayou Sara Company is an incorporated institution. It is submitted that this is insufficient. The existence of the corporation alleged and named in the plea, is not proven by the reception in evidence of a charter of a corporation called by a different name and bearing another title. The omission of the word mail in one corporation could not be supplied by the Court any more than could that word be stricken from the name of the other corporation, in order to effect a conformity of titles. By no legal presumption can an identification be established. By no logical deduction from the facts disclosed on the record, can such an identity be shown. The corporation must stand or fall by the title the charter bestows upon it. It cannot be enlarged or diminished, added to, or cur-

tailed in one word to suit the interest or convenience of the corporators. The name is a part of the corporation. C. C. 423, 437.

Another requirement of the second section of the act of 1855, page 183, and the first Article of the pretended charter, have been omitted. The said section of the statute requires them to make and use a corporate seal, and so does the Article 1 of the charter. Without the fulfilment of this requisite, the corporation could not be called into existence. It was essential to its creation, and not simply directory; it was visceral and not formal. There is not one title of proof on the record, that any corporate seal was made, or used by the company, and therefore it was only an unincorporated commercial association. By the first Article of the act, the corporation was to go into operation as soon as the requisites of the law for organization should be fulfilled. This was a condition precedent to its corporate existence. Without the seal, the symbol of its life, it could do no act as a corporation, or invoke the privileges or exemptions of one. *Spencer, Field & Co.* v. *Paul Cook, et als.*, Opn. Book, No. 6519. Its rights, duties and obligations, as regards themselves and others, will be tested by the principles and rules of the commercial Codes, and not by those of corporate laws. The laws divest it of its lofty pretensions, which it asserts, and reduces it down to its veritable nature, and that is a trading company, conveying property and persons for hire on its boats navigating the Mississippi river. Vide above case.

It is nowhere admitted or proved that the company ever existed as a corporation. In the petitions of the plaintiffs, it is charged that the company is a commercial partnership, and this allegation is not contradicted by the testimony in the transcript. After administering proof that the association existed, and conveyed persons and property for hire, the burden of proving a charter rested on the defendants. If they omitted to adduce in evidence the charter, creative of a corporation of the identical appellation of the one alleged in their plea, valid in all its parts, essential to communicate to it legal vitality, they have failed in their proof. The name and seal should be shown, for the seal is requisite to its existence, and to authenticate its acts, as the great seal is requisite to the validity of a commission issued by Gov. Wells, to enable a Judge to execute the functions of his office.

Another ground presents itself in favor of the pretensions of the plaintiffs. They all resided out of the State of Louisiana at the date of the obligations sued on, and contracted with the regularly constituted officers of the boat upon the faith of the company, which used its boats in navigating that portion of the Mississippi River lying between this city and Bayou Sara, and cannot be presumed to know of the corporative capacity of it. A man is presumed to know the law of his own State, and cannot plead ignorance thereof, but he is not presumed to know the law of a foreign State. There was nothing in the title of this company, or the

word of the president, from which he could infer the existence of a corporation, or enunciative of such a fact.    There is nothing in proof, from which it can be implied, that they were cognizant of the State law, authorizing the creation of corporations by notarial act.    The law was a local one, made for the people of this State, having an infra-territorial operation, and by which a company was created for internal navigation and commerce.    We then respectfully submit that the actions of the plaintiffs cannot be defeated, even should the corporate character of the adduced instrument be established, unless the plaintiffs are shown to have had positive knowledge of it.    Presumptions, inferences, inductions will not do; and the Court will not be warranted in drawing them.    If foreign laws are required to be proved as facts, before your Honors can notice them, how can it be required of men uninitiated in juridical science to know the laws of a State in which they never lived ?    How can it be presumed that they had a knowledge that this association, the creature of a local statute, was clothed with the formalities requisite for its complete corporate organization, and had the charter published and recorded ?    Would a citizen of Louisiana be presumed to know the local statute law of Kentucky or Indiana, which authorized the creation of corporations, and under which a company similar in character was formed ?

Other objections exist to the corporate existence of this company.    The act of 1848, p. 74, § 16, requires a certified copy of the act to be presented to a District Judge, with a petition asking the same to be examined into by him, a copy of which must be served on the District Attorney, which, if contrary to law, he must file his opposition, when the Court must hear and determine on the same.    This requisite was not complied with, but a simple certificate of the District Attorney approving the act.    This can have no effect, for he had no authority under the statute of 1855, to give it.    He is allowed to give such a certificate to charters creating scientific, literary, religious and charitable corporations only.    Section 1, Rev. Stat. 1856.

Should the Judge find the act legal, he is then to confirm it, but if not legal, he must amend it, and the notary must certify the amendments, etc.; provided thirty days' notice be published in the papers, within which time any person can oppose it.    A certified copy of the act must, within thirty days after the decree of the Judge, be filed in the office of the Secretary of State.    All these steps must be taken before the act becomes a body corporate.    See opinion of Supreme Court in Ms:, No. 6519. These provisions of the statutes of 1848, I take to be in force now.    The statute of 1855 is not repugnant to, nor irreconcileable with them.

Public policy demands that, when the State delegates its power to individuals to form corporations for certain purposes, through the agency of a notary, that it should reserve to its Courts and attorneys, the right of supervision and correction, in order to protect its citizens against its abuse; and this it has done by prescribing forms for their creation.    It

never intended to entrust a sovereign prerogative of such transcendant importance, to the unrestrained discretion of a petty notary, and a few avaricious men, who seek solely their own gain. Their object is self-aggrandizement, and not the public good. Hence the necessity of the protective safe-guards and the tutelary vigilance of some high officers of the State, such as a Judge, and attorney, and the deposit of a copy of the charter with the Secretary of State. In Rome, a corporation was illegal unless created ea vel Senatus consulti anctoritate vel Cæsar coieret; a decree of the Senate or Constitution of the Emperor. Brown's Civ. Law, 101, 2; Dig. 47; Lib. 22, 3; ib. 27, tit. 22. In Great Britain, a charter can be granted by Parliament and the King, through a legislative act, approved by the latter in his legislative capacity, or it may emanate directly from the King, in virtue of his regal prerogative, or it may be created by prescription, which presupposes a grant lost by the lapse of time. Ang. & Ames on Corp. pp. 52, 3.

Before the enactment of a general corporation law in this State, the charter was the immediate act of the Legislature. Now the charter is passed before a notary, and must be accompanied and followed by certain specified formalities, without the observance of which, there can be no legal corporation. The substitution of a notary who draws up the charter, to a committee of the Legislature, who formerly framed it, demands a more prudent exercise of the power, and a more rigid observance of forms than was necessary for the Legislature to practice. Policy enacts a more punctilious enforcement of them on the part of the associates, in order to guard public interest and protect private individuals from the snares and frauds of men who associate their capital, skill and energies to drive individual enterprise out of competition, and to enjoy a monopoly of profits. An elegant scholar and profound political philosopher has said, that associated wealth is the dynasty of modern republics. Such bodies cannot expect an indulgent interpretation on the part of Courts.

Besides, these requisites are intended to protect the people against charters conflicting with the Constitution and the general provisions of the law. For the statute says, that the attorney shall examine the act, and if it be contrary to law, the Judge must amend it, etc. Corporate power, being in derogation of private right, must be strictly construed. Kent, pp. 298–9, ed. 1840.

We further contend, that the law under which the defendants proceeded to organize this company, is in conflict with the Constitution of 1852, Article 115. The English title of the act (1855 p. 182) is : "An act for the organization of corporations for works of public improvement and utility." The French title is : "Acte pour l'organisation ac corporations, pour l'execution de travaux d'amelioration et d'utilité publique." The word public follows utility, and qualifies it, but it is not thus in the English text. It there qualifies both improvement and utility, for it does

not change its termination in English, to suit the plural or singular noun, as it does in French. Now the French word, publique, applies only to utility, and cannot, without a grammatical solecism, be applied to the plural noun improvements. It thence results, that the works of improvement authorized to be constructed or maintained are private ones. It is for the execution of such works alone, and those of public utility. We conceive that both texts must have weight, and being made in pari materia should be construed together.

There are, then, two objects expressed in this title, and the act is void. 5 An. Rep. 92, 94, 95; 11 ib. p. 439, 723; 12 ib. 593; 13 ib. 433.

But it is urged that improvements and utility are synonyms, and at all events, one may be rejected as a pleonasm. The Legislator has thought proper to employ both, and to connect both by the copulative et or and, which indicates that he intended to use them in different senses. He uses them as embracing a multitude, and not unity of objects, and the body of the act included a multiplicity of objects.

If the lexicon is consulted, we find they differ. Webster, in his Dictionary, verbo improvement; 2, melioration, which is the best translation of the French amelioration, and at 10 gives the various definitions of it; and of the word utility, he gives an entirely different meaning. Houses, buildings, etc., do not fall under the definiton of works of utility.

In popular parlance they also differ. The common understanding of men is, that more than one object is meant, when one thing and another are spoken of. Two cannot mean only one. We say, A and B are partners, C and D are brothers, clearly implying a duality of objects.

But the title of the law is to organize corporations for the execution of works. The Civil Code defines a work, Article 852. We speak of a work of art or science, which is painting, statuary or a book, etc., but by what process of logic or magic, can constructing or maintaining boats, and navigating a stream, be converted into a work. The 3d article of the charter (Rec., p. 20) declares the object to be to maintain boats for the transportatation of persons and freight, for hire. The verb to maintain, is not a work, nor is the transportation of persons, a work, etc. It is only the use, employment and navigation of boats. The use and employment of a boat are different from maintaining and keeping one. It suggests the idea of immobility or fixedness. At page 25, of Record, they may build or cause to be built, etc.

To maintain, is the act of keeping; to use a boat, in a trade is an operation of navigation and commerce. And the last clause of the first section of the act forbids any corporation created under it from engaging in mercantile business.

Again: No part of the act authorizes a corporation to take the name of a mail company, or to organize for the purpose of carrying the mail. The law is unconstitutional, because it embraces multifarious classes of sub-

jects and objects. Indeed, it is a complete congeries and jumble of provisions. The first section embraces nearly fifty objects for which companies may be incorporated; and from section five to ten, inclusive, various provisions are made, which include matters totally different. Is there an unity of objects in the provisions regulating the dissolution, modification, etc., the responsibility of stockholders, restrictions on plank roads, railroads, and the title ? 11 An. p. 722 ; 5 An. p. 95.

Let us assume, however, for the sake of argument, that the law is constitutional, does it delegate the power asserted and exercised by the defendant ? We think it does not. Individuals are permitted to construct and maintain docks, steamships and other vehicles for the transportation of freight and passengers, and generally all works of public utility and advantage. Now, not to repeat the criticism to which we have already subjected the word "works," we say that the transportation of passengers, or the business of running boats in trade, are distinct from the operation of keeping them, or building them. We also may affirm, that the employment of a boat in trade is not a work, but an operation of commerce.

Again : A man may be authorized to maintain or keep boats suitable for carrying freight, and not be authorized to carry freight. The true meaning of the clause seems to be this: that boats may be built and kept, adapted to, fit for, and suitable for the transportation of persons, etc. And this is the construction placed on the clause by the Legislature of 1861, p. 37. We refer the Court to both texts. And it was competent for the Legislature to interpret their own work. Corporations being the creatures of law, can exercise no powers not expressly conferred, or necessary to execute their express powers. Their powers are to be strictly construed. 2 Kent, p. 298.

This pretended incorporated company, then, falls under a different name, and has none of the rights and privileges of one. C. C. 327. What, then, is the nature and liabilities of the industrial combination, whose members are sued ? Indisputably a common commercial partnership. Story on Part., § 164. And the members are liable in solido. No stipulations, in their articles of partnership, limiting their responsibility, can bind their creditors. Story lo cit.; *Blundell* v. *Winson*, 3 Simmon's. Rep., 600 ; *Walburn* v. *Nigilby*, 1 Mylne & Keen, 5176. See also *Spencer*, *Field & Co.* v *Paul Cook et al.*, by our Supreme Court, No. 6519.

No matter what name the manager of the association takes, whether president, director, administrator, chairman or syndic, the law remains the same. C. C. 2838-9; and Story, § 164. The assumption of the name and powers of a corporation, was a usurpation on the part of the members, and they cannot invoke the protection and exemptions given to corporators against responsibility for their conduct and acts.

HOWELL, J. The defendants are sought to be made liable as commer-

cial partners on certain drafts, drawn by an agent, on and accepted by the President of the New Orleans and Bayou Sara Mail Company.

The defence is that said company is a private corporation, duly incorporated under the laws of this State; and that defendants, having paid the full amount of their stock, are not liable.

Judgment was rendered in favor of defendants, and plaintiffs appealed.

The first point raised by plaintiffs is, that the charter introduced in evidence is that of the New Orleans and Bayou Sara Company, and not of the New Orleans and Bayou Sara *Mail* Company, as set out in the pleadings.

If there is any force in this objection, plaintiffs have not made out their case against the defendants; for the proof introduced by themselves is, that the company of which defendants are members is the New Orleans and Bayou Sara Company; that said company is the owner of the boats against which their claims exist, and that the parties and officers, with whom they contracted, are the officers and stockholders of the New Orleans and Bayou Sara Company. We think, however, that this variance in the name is, under the circumstances, unimportant. C. C. 423. There is no doubt about the identity of the company.

The next point raised is, that the provisions of the Act of 1848, as to the certificate of a District Judge, filing a copy of the charter in the office of the Secretary of State, etc., are not observed. This, we think, was not required, as this company was incorporated under the provisions of the Act of 1855, approved March 14th, which Act does not require such formalities. Its requirements seem to have been complied with.

Another point presented is, that said Act of 1855 is in violation of Article 115 of the Constitution of 1852, because two objects are expressed in the title. It is entitled "An Act for the organization of corporations for works of public improvement and utility." This, in our opinion, is not in conflict with the Constitution. The object of the Act, as expressed in the title, is the organization of corporations of a particular class: those which promote works of public improvement and utility. The fact that those corporations may be organized for various purposes, within the prescribed class, does not change the constitutional character of the general law, which provides the mode in which they are to be organized, and fixes their powers and liabilities. The law embraces but one object, as contemplated by the Constitution.

It is further objected, that said Act does not authorize the establishment of a corporation, such as this, for the carrying of freight and passengers for hire on the Mississippi river. The clause under which this company was organized reads: "to construct and maintain docks, steamships and other vehicles for the transportation of freight and passengers; and generally all works of public utility and advantage. It is to be remarked that the debts, on which these suits are brought, were created in the construction and equipment of the steamboats owned by the com-

pany, and that there is no doubt that a company may, under the terms of the Act, be organized for the construction of steamboats. But the defendants contend, and we think with reason, that a company which is authorized to build and maintain steamboats for the transportation of freight and passengers, may also use their boats in that business; that the right to construct and to own boats necessarily includes the right to employ or navigate them, as that is the purpose for which they are built.

We conclude, then, that the defendants are stockholders in a regularly incorporated company, and having, as it is shown, paid up their stock, they cannot be made liable as commercial partners.

It is therefore ordered that the judgments appealed from in these consolidated cases be affirmed, with costs.